689 F.2d 929
 Daniel R. COOPER, Christopher C. Knox, Dennis J. Olonia and
Thomas W. Tillman, Plaintiffs/Appellants, Cross-Appellees,
v.
Norman SINGER, Defendant/Appellee, Cross-Appellant,
Cecilia Valdez, Jake Salazar, Ramon Naranjo and County of
Rio Arriba, Defendants/Appellees.
 Nos. 81-2016, 81-2113.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 30, 1982.
 
 Joan Friedland of Friedland, Simon, Lopez, Vigil & Nelson, Santa Fe, N. M. (Michael E. Vigil, Santa Fe, N. M., on brief), for plaintiffs/appellants, cross-appellees.
 Edward F. Mitchell, III of Montgomery & Andrews, P. A., Santa Fe, N. M. (John B. Pound, Santa Fe, N. M., on brief), for defendants/appellees and cross-appellant.
 Before SETH, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This appeal arises from a successful claim under 42 U.S.C. § 1983. Judgment was rendered for the plaintiffs on July 6, 1981. On July 13, plaintiffs filed a motion requesting attorney's fees as permitted by 42 U.S.C. § 1988. This motion was denied on July 24. On August 3, plaintiffs filed a motion requesting the district court to reconsider and alter the order denying attorney's fees. This motion was denied on August 18. On September 3, plaintiffs filed a notice of appeal to this court which recited that the appeal was to the original judgment, the July 24 denial of attorney's fees and the August 18 refusal to alter that denial. The appeal from the attorney's fee determination is the only significant issue timely raised.
 
 
 2
 The Supreme Court held in White v. New Hampshire Dept. of Employment Security, --- U.S. ----, 102 S.Ct. 1162, 71 L.Ed.2d 325, that a motion for attorney's fees is not a Rule 59 motion because the question of attorney's fees is "uniquely separable" from the merits of a case. Because of this separability, the plaintiff in White was permitted to file a motion for attorney's fees four-and-a-half months after the entry of a final judgment on the merits. Under White a motion for attorney's fees is not tied in any way to the time for appeal of the underlying case, and will not be barred solely because that time has run. The decision in White thus changed the practice in this circuit which had been described in Gurule v. Wilson, 635 F.2d 782 (10th Cir.), and in Glass v. Pfeffer, 657 F.2d 252 (10th Cir.).
 
 
 3
 Therefore, in the present case, the finality of the July 6 judgment on the merits does not bar an appeal on the question of attorney's fees timely taken. For purposes of an appeal on that question, it is the finality of the July 24 order which is important. The time for appeal from this order was tolled by the plaintiffs' August 3 motion asking for a reconsideration of the denial of attorney's fees. This motion, because it went to the essential subject of the July 24 order, operated as a Rule 59 motion with respect to that order and tolled the time for appeal. See 9 Moore's Federal Practice P 204.12(1), at 4-67 (2d ed.). (A motion which draws into question the correctness of a judgment is a Rule 59 motion, no matter what the label.) Therefore, an appeal from the July 24 order denying attorney's fees is properly before us.
 
 
 4
 This issue raises the question whether the district court acted within its discretion in denying attorney's fees to a prevailing party in a § 1983 action. The statute permitting an award of attorney's fees in such cases (42 U.S.C. § 1988) reads, in part:"In any action or proceeding to enforce a provision of section ... 1983 ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."
 
 
 5
 The discretion which this statute allows the court has been construed narrowly. Chicano Police Officer's Ass'n. v. Stover, 624 F.2d 127 (10th Cir.). The Supreme Court has held with respect to a similar statute that a prevailing party should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263, at 402, 88 S.Ct. at 966. Because of these limitations on the discretion to deny attorney's fees, we must examine the lower court's position to determine whether special circumstances were present.
 
 
 6
 The district court demonstrated a consideration of both the policy and the case law surrounding judicial discretion to deny attorney's fees in civil rights actions. The order denying fees was accompanied by a memorandum stating why the court believed that a grant of attorney's fees in this case was unwarranted and would not serve the policies behind the statute. The important factor in the district court's decision was the contingent fee agreement between plaintiffs and their counsel. This agreement, in the court's opinion, made it unnecessary for any award of fees. An award was unnecessary in its view because the contingent fee arrangement itself fully served the congressional policy of enabling plaintiffs to protect their civil rights. Thus the court decided that fees awarded over and above the percentage set out in the contingent fee arrangement would constitute a windfall to the plaintiffs' attorney at the expense of the defendants.
 
 
 7
 The congressional policy behind § 1988 is set forth in Senate Report No. 94-1011 (Oct. 1, 1976), reprinted in (1976) U.S.Code Cong. & Ad.News 5908. The report states that civil rights laws depend heavily on private enforcement, and that the purpose of the law is to provide plaintiffs with an opportunity to enforce their rights undeterred by the possibility of large attorney's fees. The report contains a brief discussion of how to determine reasonable rates, and approves of standards that "are adequate to attract competent counsel, but which do not produce windfalls to attorneys." Id., at 5913. This caution against "windfalls" for attorneys shows that Congress was exclusively interested in making civil rights actions more attractive to prospective plaintiffs. Congress was not trying to get these cases into court by making them lucrative to attorneys. Therefore, an award of attorney's fees which benefits a plaintiff's attorneys rather than a plaintiff does not further congressional policy. Such awards may, in the discretion of the court, be denied.
 
 
 8
 A grant of attorney's fees where a contingent fee agreement has been entered into without more may result in something of a windfall for attorneys. It relieves the attorney of part of the risk undertaken by the nature of the contingent fee contract, and preserves to the attorney the benefits of such a contract. It is apparent that if the case is lost the fee is also lost under either a contingent fee agreement or § 1988. If the case is won the attorney need not be content with the percentage for which he contracted as it remains the floor. A claim under § 1988 would provide the chance for a greater amount. Yet he would still be entitled to his percentage under the contingent fee contract, even if that percentage exceeded the reasonable value of his services. The attorneys here assert that they have the option to take the higher figure. This cannot be done. An automatic allowance of attorney's fees despite contingent fee agreements would thus have the effect of insuring an attorney without necessarily improving the position of the prevailing party. The admonition of the Senate Report to avoid windfalls to attorneys indicates that this was not the congressional intent behind § 1988.
 
 
 9
 Plaintiffs argue that an award of attorney's fees under § 1988 would actually improve the position of the original plaintiffs, at least indirectly. An oral modification of the contingent fee agreement in this case permitted a dollar for dollar setoff against the fee percentage of any § 1988 award. This consequence could have followed regardless of the change. Hamilton v. Ford Motor Co., 636 F.2d 745 (D.C.Cir.). Thus the amount that the original plaintiffs had to pay their attorneys was lessened to the extent that the fees were granted under § 1988. This increase in the original plaintiffs' "take home" award, their attorneys contend, is a sufficient benefit to justify an award of attorney's fees.
 
 
 10
 Under the contingent fee agreement, the original plaintiffs had agreed to pay one-third of their award, or $20,000. If attorney's fees had been awarded in the amount requested of the court, plaintiffs' attorneys would have obtained over $35,000. Approximately $15,000 would have passed from the defendants to the plaintiffs' attorneys with no benefit to plaintiffs, this despite the mutually agreed upon arrangement for fees. The district court can properly avoid such a result which taxes the losing party without furthering the purposes of § 1988. Buxton v. Patel, 595 F.2d 1182 (9th Cir.); Zarcone v. Perry, 581 F.2d 1039 (2d Cir.).
 
 
 11
 However, the existence of a contingent fee contract does not of itself constitute "special circumstances" which would render an award of attorney's fees unjust under Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263. We find nothing in the legislative history nor in the decisions to lead to this result. Such a contract cannot, however, serve only as a floor for fees and to give the prevailing attorney two chances for fees. The contingent fee contract at the least must evidence the maximum fee which the plaintiff and the attorney felt necessary to secure the representation. This is the maximum contemplated by Congress to accomplish the result it sought.
 
 
 12
 Thus we must hold that the trial court was in error to use the existence of the contingent contract as a "special circumstance" to deny the award of fees. Fees under § 1988 are ordinarily awarded to the prevailing party and these are over and above the judgment. However, if the plaintiff and his or her attorney have agreed on a figure for fees, or a percentage, this should constitute the maximum allowable fee. If the agreed fee is above what is reasonable under § 1988 as determined by the court, only the reasonable portion may be the awarded amount.
 
 
 13
 The judgment must be REVERSED and the case is REMANDED for further proceedings.
 
 
 14
 HOLLOWAY, Circuit Judge, concurring and dissenting:
 
 
 15
 I agree with the court that the appeal from the order denying attorney's fees is properly before us. I also agree that a contingent fee agreement does not bar recovery of attorney's fees under § 1988. For reasons that follow, I am unable to accept the rule laid down that a fee agreed on in a private agreement with counsel constitutes the maximum allowable fee.
 
 
 16
 The statute and its history do not call for such a general limitation. While the court's concern with windfalls is proper, the statutory command is plain: the standard of a "reasonable attorney's fee" is the measure in determining a proper fee awarded under the statute and to be recovered from the opposing party. Imposing a limitation based on a private agreement between the vindicated civil rights litigant and his counsel is out of harmony with the statute. Such a limitation should be rejected as we did in setting a reasonable fee under the statute on odometer manipulation in Fleet Investment Co. v. Rogers, 620 F.2d 792, 793 (10th Cir.).
 
 
 17
 At the outset it is appropriate to refer to a portion of the legislative history of § 1988 where Congress articulates, in a general fashion, the standards to be used in fee awards:
 
 
 18
 It is intended that the amount of fees awarded under (§ 1988) be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, see Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974), are correctly applied in such cases as Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974); Davis v. County of Los Angeles, 8 E.P.D. P 9444 (C.D.Cal.1974); and Swann v. Charlotte-Mecklenburg Board of Education, 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, "for all time reasonably expended on a matter." Davis, supra; Stanford Daily, supra, at 684.
 
 
 19
 Senate Report No. 94-1011 (Oct. 1, 1976), reprinted in (1976) 5 U.S.Code Cong. & Adm.News 5908, 5913.
 
 
 20
 The Johnson decision of the Fifth Circuit enumerated twelve factors to be considered in determining attorney's fee awards made under an analogous provision of Title VII.[1] We commended consideration of the Johnson criteria by the district court on remand "in arriving at a fair and reasonable judgment," while stating that that not all the criteria need be considered. See Francia v. White, 594 F.2d 778, 782 (10th Cir.).[2] As guidance in determining reasonable fees we have, in addition to the Congressional citation of Johnson, the references noted to the Stanford Daily, Davis and Swann cases. These cases, cited in the Congressional report for the standards being "correctly applied" there, demonstrate the overriding importance attached to reasonable compensation despite the contractual arrangements, if any, which the attorney and client have made. See also Miller v. Amusement Enterprises, Inc., 426 F.2d 534, 538 (5th Cir.).
 
 
 21
 In Swann the court applied standards differing slightly from those elaborated in Johnson. In discussing the fixed or contingent fee factor the court stated:
 
 
 22
 There was no evidence of a fixed contract by the named plaintiffs for a set fee. However, in other civil rights cases where counsel fees have been awarded, the courts have held that reasonable fees should be granted regardless of whether the individual plaintiffs were obligated to pay any fees, (citations omitted) and regardless of whether the attorneys were salaried employees of a legal aid society. (Emphasis added).
 
 
 23
 Swann v. Charlotte-Mecklenburg Bd. of Education, 66 F.R.D. 483, 486 (W.D.N.C.1975).
 
 
 24
 The Fifth Circuit, progenitor of the Johnson standards, recently examined the effect of a contingent fee agreement in determining an award of reasonable fees under section 4 of the Clayton Act. See Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 581-84 (5th Cir.). There the fee arrangement called for counsel to receive either court-awarded fees or 50% of the combined sum of trebled damages and the fee award, whichever was greater. The court reversed an award limited to treble damages, stating that if "the district court judge assumed that he should deny attorneys' fees in excess of the award of damages, he acted on an improper assumption." Id. at 584. The court stated that the trial judge did not point out how the other Johnson factors affected the fee, that they also had to be considered, and that "(a) district court is not bound by, and may not merely ratify, the agreement of the parties as to the amount of attorneys' fees. Piambino v. Bailey, 5 Cir. 1980, 610 F.2d 1306, 1328." Copper Liquor, 624 F.2d at 583 n.14. (Emphasis added). The determination of a reasonable fee under § 1988 "should be divorced from consideration of a fee arrangement." Sargeant v. Sharp, 579 F.2d 645, 648 (1st Cir.).
 
 
 25
 We have stated that an "award that does not fully compensate an attorney for his time plainly does not meet the standard of reasonable fees required by section 1988." Gurule v. Wilson, 635 F.2d 782, 793 (10th Cir.); see also Fleet Investment Co., Inc. v. Rogers, 620 F.2d 792, 793 (10th Cir.) (rejecting the argument that a fee awarded under the attorneys' fee provisions of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981-1991, is limited to that stipulated in an agreement between the plaintiff and his counsel). Counsel may very well accept a civil rights case on a low contingent fee arrangement favorable to a plaintiff, for worthy reasons. If the client is vindicated, the award of a reasonable statutory fee from the defendant should not be constricted by the agreement.
 
 
 26
 On remand, I agree that the district court should determine whether the prevailing party is entitled to a fee award "without regard to the existence of a private fee agreement." Sargeant v. Sharp, 579 F.2d 645, 648 (1st Cir.). If the party is held so entitled, the court should set a reasonable fee sufficient to attract competent counsel, weighing the Johnson criteria. If the reasonable fee exceeds the amount counsel will receive from the client under the contractual arrangement, the award should be used to compensate the client up to the contracted amount he pays the attorney, and the remainder should inure to the benefit of the attorney to complete payment of the reasonable fee as determined. Id. at 649; see Wheatley v. Ford, 679 F.2d 1037, 1041 (2d Cir.) (where § 1988 fee award exceeded recovered damages, plaintiff's contingent fee contract liability deemed to be paid to the extent the statutory award was received by counsel). On the other hand, if the reasonable fee award is less than the contracted amount, and that agreed fee is found to be unethically excessive or unreasonable, the court may, by judicious exercise of its equitable and supervisory powers over the bar, limit the amount which the attorney may actually receive. See Sargeant, 579 F.2d at 648 and n.4.[3]
 
 
 27
 For these reasons I must respectfully dissent in part.
 
 
 
 [1]
 The Johnson criteria are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and; (12) awards in similar cases
 
 
 [2]
 There are statements in Johnson, 448 F.2d 714, 718, about agreements on fees not being decisive as to fees awarded under the statute, that a litigant might agree to pay the attorney a percentage contingent fee greater than the fee the court might award, and that the criterion is not what is agreed but what is reasonable. The court stated further:
 In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount.
 As discussed below, however, the Fifth Circuit in later opinions has not treated the fee arrangement as a binding limit on a reasonable fee, or a bar to enhancement on consideration of other Johnson factors. E.g., Copper Liquor Inc. v. Adolph Coors Co., 624 F.2d 575, 583 n.14 (5th Cir.). Moreover, while in Francia v. White we commended consideration of the Johnson factors, the Francia opinion states that not all of them need be considered. Thus it does not appear that each statement in the Johnson opinion, like that above, is binding as a strict limitation which we must follow.
 
 
 [3]
 Though contingent fee agreements are of special concern to the courts and are not enforced on the same basis as commercial contracts, Spilker v. Hankin, 188 F.2d 35, 39 (D.C.Cir.), care should be taken when contemplating interference with a voluntary fee arrangement. Intl. Travel Arrangers, Inc. v. Western Airlines, 623 F.2d 1255, 1278 (8th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605; Dunn v. H. K. Porter Co., 602 F.2d 1105, 1111-1112 (3d Cir.); see also Annot., 77 A.L.R.2d 411 (1961)