Jill L. BAYLESS, Plaintiff,

v.

IRV LEOPOLD IMPORTS, INC., an Oregon corporation, dba "Irv Leopold Toyota", and Elizabeth E. Ross, Defendants.

Civ. No. 85–1556–BU.

United States District Court,
D. Oregon.

May 13, 1987.

Richard V. Bayless, Hampson, Bayless, Murphy & Stiner, Portland, Or., for plaintiff.

Jacqueline A. Weber, Lake Oswego, Or., Stephen J. Doyle, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants.

## OPINION AND ORDER

JAMES M. BURNS, District Judge.

This matter comes before the court on motion petition of plaintiff Jill Bayless for attorney fees. Her petition results from an action she successfully brought against Irv Leopold Imports, Elizabeth Ross and three other defendants claiming that with intent to defraud they misrepresented the actual mileage on Bayless' 1973 Porsche, in violation of Subchapter IV, Motor Vehicle Information and Cost Savings Act (Act or Odometer Act), 15 U.S.C. § 1981–91. Judge Leavy earlier granted summary judgment in favor of three other defendants.[1] I found, narrowly, defendants Ross and Leopold liable to Bayless for a total of $3,954.

## FEE CALCULATION

■ The authority for the attorney fee award is found in § 1989(a)(2): "Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable * * * [for] reasonable attorney fees as determined by the court." The question of what is a "reasonable" attorneys' fee in this case poses some difficulties. No court in this Circuit has considered the method for calculating a reasonable fee under the Act; the Act provides no real guidance as to what constitutes a reasonable fee.

As an initial matter, it is somewhat unclear whether I may (or must) seek guidance from opinions that calculate reasonable attorney fees under one of the more than 100 federal statutes authorizing payment of attorney fee awards. I am satisfied that I may. The Supreme Court, when

---

1. Initially, a separate pendent fraud claim was asserted against three other defendants. Summary judgment was granted in their favor. Counsel says he has successfully removed from billing sheets time properly charged to those defendants. I am not too sure he has succeeded.

considering a fee award under 42 U.S.C. § 1988, said "[T]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'." *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983).

The Ninth Circuit "rule" seems to be based upon the twelve factors described in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975). Among the *Kerr* factors, the "results obtained" has been described as "most critical." *White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983).[2] A basic problem in applying the *Kerr* factors is that no analytic framework is provided for their application. Furthermore, many of the factors are conflicting and at least partially redundant.[3] Nonetheless I will climb the twelve rungs of the *Kerr* ladder and calculate what I believe is a reasonable attorneys' fee.[4]

INITIAL INVESTMENT

▮ Plaintiff has the laboring oar to establish the hours spent on the litigation and to prove that those hours were reasonable. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiff's billing records show 336.55 hours expended on the entire case. From that total, plaintiff makes the following deductions (which are stated in terms of dollars, not hours): $4,932 for the time attributable directly to claims against the three defendants in whose favor summary judgment was granted; $648.67 for one-third of the time expended on the separate pendent fraud claim against the three defendants in whose favor summary judgment was granted; and $747.50 for the time spent by an associate lawyer's attendance at trial. After these deductions, plaintiff's requested attorney fees are $20,249.83, represent- ing over 245 billable hours of work. Defendants do not contest the hourly rate plaintiff's attorneys use in determining their initial investment. They simply contend that the total number of hours claimed is not correct or allowable and that the results obtained call for lower fees.

KERR FACTORS

*Time and Labor Required*

Included in my consideration of this factor is whether all hours spent were "necessary" and whether there was a duplication of efforts by other lawyers. *Hensley* instructs a fee applicant to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Time records submitted by plaintiff's attorneys aggregate all work done by an attorney on a single day. It is difficult to accurately segregate time expended on matters that involve the three defendants in whose favor summary judgment was granted. In addition, it is impossible to determine how much time on a given day an attorney spent of each of his various tasks. For example, on December 18, 1985, counsel billed 3.8 hours to "Draft Response to Defendant Black, et al.'s Request for Production; conference with client regarding deposition." Time expended on defendant Black is properly excluded from the award for attorney fees, while time expended on the conference with client is properly included in the award. A substantial amount of the complexity in resolving this case stems from the sizeable amount of time plaintiff's attorneys had to devote to stubborn (to put it as charitably as I can) tactics by counsel for the defendants who are no longer in the case. Since those defendants were in the case until very shortly before the trial, sizeable time

---

2. For a thorough explanation of the development of the method of fee calculation in the Ninth Circuit, see 2 M. Derfner & A. Wolf, *Court Awarded Attorney Fees*, ¶ 15.03[5].

3. For example, the third *Kerr* factor of the "skill requisite to perform the legal service properly" is redundant; it is largely duplicative of two other *Kerr* factors: the novelty and difficulty of the questions involved and the experience, repu- tation and ability of the attorneys. Because of the redundancy, I do not consider the third factor.

4. I am guided by *Bertrand v. United States*, 562 F.Supp. 222 (D.Or.1983) (Redden, J.), where my colleague was required to climb, as I must, "the twelve rungs of *Kerr*, or be found to have abused my already weary discretion."

was somewhat intertwined as between the claim against defendants Leopold and Ross and the claim against the other three defendants.

Having carefully reviewed the time records of plaintiff's lawyers, I find many instances of billings that were related only to the claims against the defendants in whose favor summary judgment was granted. I find an unusually large amount of time expended on preparation and revision of the pretrial order and of trial memoranda. I also find duplication of trial preparation time. For example, both attorneys involved in the case spent the entire day prior to trial in preparation, in addition to numerous earlier billings for trial preparation. I also find an excessive number of lengthy conferences between the plaintiff and her attorney. While thorough communication between the attorney and client is necessary, I believe the conferences were excessive. For example, on December 18, 1985, lead counsel billed two and one-half hours to "conference with Jill regarding case." On the same day, the associate counsel billed an unsegregated amount of time to "conference with client regarding disposition." The lead counsel billed an unsegregated amount of time to "telephone conference with Jill Bayless" on December 16, 1985, .35 hour to "telephone conference with Jill regarding documents to produce" on December 19, 1985 and an unsegregated amount of time to "conference with client" on December 23, 1985.

### Novelty and Difficulty of Questions

The legal questions presented in this case were neither novel nor unusually difficult. There were close factual questions as to the actual mileage on the engine (and therefore defendants' liability) as well as the cost of resultant repairs. There were no complexities such as those in *Duval v. Midwest Auto*, 578 F.2d 721 (8th Cir.1978), which involved an alleged conspiracy to alter odometers on a large scale. In that case, over two hundred separate automobile transactions involving the defendants were investigated in detail by the plaintiffs' counsel. *Id.* at 726.

### Preclusion of Other Employment

Preclusion of other employment by attorneys representing plaintiff which occurs as a result of that representation is a relatively insignificant factor. In any event, no claim has been made here by plaintiff's attorneys that the acceptance of this case has precluded other employment or that conflicts of interest have been created by this case.

### Customary Fee for Similar Work in the Community

Fees charged by opposition counsel are probative of the customary fee for odometer alteration lawsuits. The attorney for defendant Ross testified he billed his client $8,647 and that ten to fifteen percent ($865—$1,297) of that amount was attributable to matters involving the three defendants in whose favor summary judgment was granted. The attorney for defendant Irv Leopold Imports testified she expended between $4,225 and $4,550 in the defense of her client. No evidence was presented of any other comparable fees for odometer alteration cases in Oregon.

### Fixed or Contingent Fee

Attorneys who work on a contingent fee basis must normally charge a higher fee than those who work on a noncontingent fee basis, to compensate them for the risk of loss and the risk of receiving no compensation for services rendered, and to permit them to earn an income that would be competitive with colleagues who get paid win or lose. *See, e.g., Blum*, 465 U.S. at 903, 104 S.Ct. at 1551 (Brennan, J., concurring). Plaintiff's attorneys took this case on a contingent fee basis.

### Time Limitation

Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late state in the proceedings. *Johnson*, 488 F.2d at 718. There is no evidence that this case was priority work for which plaintiff's attorneys are entitled to some premium.

*Amount Involved and Results Obtained*

Plaintiff claimed actual damages of $495 for the difference between the price paid and the value of the car, plus $2,225 in additional expenses allegedly attributable to defendants' acts. If claimed damages were awarded and trebled (the Odometer Act allows treble damages), plaintiff's damages would have been $8,160. I found plaintiff to have been damaged in the amount of $1,318 and awarded treble damages of $3,954. It has been argued that a reduction made on the grounds of a low award would be an error unless the size of the award is the result of the quality of representation and that to tie an award to the amount of damages would subvert the Act's goal of opening to all who have meritorious claims. *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2nd Cir.1985). Nonetheless, under *Hensley* the most critical factor in the final determination of fee awards is the degree of success obtained. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. *See also G.L.A.D. v. Comm. T.V. of So. Cal.*, 813 F.2d 217, 222 (9th Cir.1987).[5]

In some civil rights cases, the court may consider vindication of constitutional rights in addition to the amount of damages recovered. However, where the recovery of private damages is the purpose of the litigation, a district court, in fixing fees is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. *City of Riverside v. Rivera*, —— U.S. ——, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring).

*Experience of Attorneys*

Higher rates or upward modification of fees may be allowed to an attorney who is an acknowledged expert in the substantive area of the litigation. *Johnson*, 488 F.2d

714, 719 (5th Cir.1974). Plaintiff's counsel do not make any such claim.

*Undesirability of Case*

It has been suggested that civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant. *Johnson*, 488 F.2d at 719. While an attorney's decision to help eradicate discrimination may have an adverse economic impact on his practice which the court may consider, no evidence was presented to show that occurred in this case.

*Nature and Length of Professional Relationship with Client*

A lawyer in private practice may vary his fee for similar work in light of the professional relationship of the client with his offices. The court may appropriately consider this factor in determining the amount that would be reasonable. *Johnson*, 488 F.2d at 719. This factor is relatively insignificant in this case.

*Awards in Similar Cases*

Whether the award obtained in a particular case viewed in absolute terms is high or low is not as important as whether the size of the award is commensurate with awards in odometer alteration cases in general. Exhibit A is a list of awards under the Act.

*Efficiency Factor*

Although not mentioned as a factor in *Kerr*, I am willing to take into consideration what has been referred to as the "thirteenth factor" or the "Panner" factor (because it was first articulated by Judge Owen M. Panner (now Chief Judge) in an unpublished opinion issued soon after he came on the bench). This factor employs a standard that rewards the efficient lawyer and punishes the inefficient one. I believe

---

**5.** I am aware of footnote six in *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987), where the court states that "results obtained" cannot serve as an independent basis for adjusting fee awards. I do not read *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), as supporting such a conclusion. In *Blum*, the court says "There remain other considerations that may lead the district to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.*

at 897, n. 14, 104 S.Ct. at 1548 n. 14. *Blum* does state that results obtained "normally should not provide an independent basis for *increasing* the fee award." *Id.* at 900, 104 S.Ct. at 1549 (emphasis added). I am mindful of my status as an inferior in the judicial hierarchy. *Yagman v. U.S. District Court*, 815 F.2d 575, 576 (9th Cir. 1987). If, as in this setting, an opinion by the Circuit is flatly contrary to an opinion by the Supreme Court, my loyalty must be to the latter, not the former.

an upward adjustment should be given to a particularly resourceful attorney who secures a substantial benefit for his client with a minimum of time invested and vice-versa. However, in light of the procedural history in this matter and the absence of other defendants, this factor plays a relatively insignificant role here.

BILLING JUDGMENT

*Hensley* instructs that a fee application should "exercise 'billing judgment' with respect to hours worked." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. *Hensley* requires a fee applicant to exercise billing judgment "not because he should necessarily be compensated for less than the actual number of hours spent litigating a case, but because the hours he does seek compensation for must be *reasonable*." *Riverside*, —— U.S. ——, 106 S.Ct. 2686, 2692 n. 4, 91 L.Ed.2d 466 (1986) (emphasis in original). The very "reasonableness" of the hours spent on a case by plaintiff's attorneys necessarily will depend, to a large extent, on the amount that may reasonably be expected to be recovered if the plaintiff prevails. In this case, where the prospective recovery is limited, it would be both extraordinary and unjustifiable for attorneys to put in $20,249.83 worth of billable hours.

Viewing this matter in general terms, the case involved one and one-half days of trial to the court. The issues were whether defendants Leopold and Ross were culpable of the requisite gross negligence and recklessness for liability under the Act and the amount of plaintiff's damages. The time expended by plaintiff's counsel in this matter is inconsistent with standards governing the private practice of law. Comparing the results obtained to the time incurred by the attorneys, a substantial reduction in the fee request is warranted.

CONCLUSION

Having considered the entire record, I am satisfied that the results obtained and unnecessary time incurred call for a substantial reduction in the request. I award judgment against defendants Leopold and Ross in the amount of $8,500 as reasonable attorney fees.

IT IS SO ORDERED.

EXHIBIT A

*Beachy v. Eagle Motors, Inc.,* 637 F.Supp. 1093 (N.D.Ind.1986).

| | |
|---|---|
| $ 1,500 | damages |
| $ 6,165.50 | attorney fees and costs |

*Burks v. Thomas,* 647 F.2d 164 (6th Cir. 1981).

| | |
|---|---|
| $ 4,434 | damages |
| $ 1,000 | attorney fees |

*Duval v. Midwest Auto,* 578 F.2d 721 (8th Cir.1978).

| | |
|---|---|
| $ 3,960 | damages |
| $14,000 | attorney fees |

*Fleet Inv. Co. v. Rogers,* 620 F.2d 792 (10th Cir.1980)

| | |
|---|---|
| $ 2,551.50 | damages |
| $ 5,000 | attorney fees |

*Gimarc v. Neal,* 417 F.Supp. 129 (Col.Div. S.C.1976).

| | |
|---|---|
| $ 1,500 | damages |
| $ 1,000 | attorney fees |

*Gonzales v. Van's Chevrolet, Inc.,* 498 F.Supp. 1102 (D.Del.1980).

| | |
|---|---|
| $ 7,105.98 | damages |
| $ 9,000 | attorney fees |

*Jones v. Fenton Ford,* 427 F.Supp. 1328 (D.Conn.1977).

| | |
|---|---|
| $ 1,500 | damages |
| $ 1,200 | attorney fees |

*Kantorazyk v. New Stanton Auto Auction,* 433 F.Supp. 889 (W.D.Pa.1977).

| | |
|---|---|
| $ 1,500 | damages |
| $ 1,185 | attorney fees |

*Kirkland v. Cooper,* 438 F.Supp. 808 (Col. Div.S.C.1977).

| | |
|---|---|
| $ 2,123.70 | damages |
| $ 2,000 | attorney fees |

*Perona v. Ted Benson Dodge,* No. 81 C 4774, slip opinion (N.D.Ill. Oct. 2, 1983).

| | |
|---|---|
| $ 1,500 | damages |
| $ 6,165.50 | attorney fees |

*Shore v. J.C. Phillips Motor Co.,* 567 F.2d 1364 (5th Cir.1978).

| | |
|---|---|
| $ 3,000 | damages |
| $ 2,000 | attorney fees |

*Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248 (8th Cir.1983).

| | |
|---|---|
| $ 1,500 | damages |
| $27,000 | attorney fees claimed |
| $11,926.40 | attorney fees awarded by District Court |
| $ 8,000 | attorney fees awarded by Circuit Court |