Eileen **EVANS**, Plaintiff,

v.

**PARADISE MOTORS, INC., a California Corporation, John Slack, Wade Smith, Michael Long, and Does 1–10, inclusive, Defendants.**

No. C–89–0079 EFL.

United States District Court, N.D. California.

Sept. 8, 1989.

Gilbert Serota, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for plaintiff.

Louis F. Urroz, San Francisco, Cal., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LYNCH, District Judge.

Plaintiff Eileen Evans seeks relief under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. section 1981 *et seq.*, alleging that defendants concealed the true mileage of an automobile they were offering to her for sale. Defendants have moved for summary judgment, arguing that plaintiff may not sue if she did not take title to or possession of the automobile. For the reasons given below, defendants' motion for summary judgment is denied.

Plaintiff is an attorney with the firm of Orrick, Herrington & Sutcliffe. In February of 1988, plaintiff arrived at Paradise Motors in the course of her search for a car. After a period of negotiation, the parties executed a purchase order for a 1986 Alfa Romeo Spider Veloce convertible at the price of $11,600. Defendants represented to plaintiff that its mileage stood at approximately 18,000 miles.

As defendants now concede, the original odometer had been replaced, and the true mileage of this car was, in fact, over 40,000 miles. Just how this fact came to light is a matter of some dispute. It suffices to note that plaintiff became aware of the true mileage after the purchase order was executed and after she tendered a deposit of $525. Once the true mileage was revealed, defendants returned her check uncashed.

In passing the Motor Vehicle Information Act, Congress intended to "prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers." 15 U.S.C. section 1981. As one of those safeguards, the "transferor" of ownership of a motor vehicle must disclose its actual mileage to the "transferee." 15 U.S.C. section 1988. Section 1989 provides for civil remedies in the event of a violation of this or any other requirement of the Act.

The Court finds that, as a matter of law, the plaintiff is a "transferee" pursuant to section 1988. Her standing to sue does not depend on whether she received the complete title or actual possession of the automobile itself.

This result is consistent with the purpose of the Act. A remedial statute shall be broadly construed to effectuate its purpose. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). With this law, Congress chose to supplement common-law fraud remedies with a federal action which specifically addressed an unusually pernicious type of fraud. The "transferee" who sues under section 1989 is a private attorney general acting on behalf of the public. She need demonstrate no injury; damages of $1500 are presumed. If she does prove actual injury, she recovers treble that amount. The successful plaintiff is awarded attorney's fees as a matter of right.

The aggressive statutory scheme suggests a generous reading of the standing requirement. A seller should not have a pre-transfer escape hatch if the tampering is discovered before the deal is closed. The harm is already done. The buyer wants to recoup the time, money, and energy she has invested in the transaction. She may feel pressured to take the car when the dealer says, as here, "You're getting a good deal even if the mileage is more."

The most effective private attorneys general are the most vigilant, those who will detect the fraud at the earliest opportunity. Certainly Congress did not intend to prevent this class from representing the public in the courts.

The question is not, as defendants have posed it, whether or not a "sale" has taken

place under California law. The Court does not decide whether or not there existed a contract enforceable by either party, or who may have been in breach. It is enough for the purposes of this motion to find that the buyer and seller, through their mutual promises, have advanced the transaction to the point where the putative buyer has a cause of action for odometer fraud, even though the car did not change hands. This was accomplished here through the execution of a purchase order and the tender of a down payment.[1]

Defendants have claimed that it was *they* who uncovered the difference in mileage and that their honesty deserves reward, not censure. The definition of "transferee" adopted here need not chill the voluntary disclosure of mistakes. Defendants will have every chance to prove their version of events before a jury and defeat the allegations of fraudulent intent. If they had discovered the difference but failed to disclose, the subsequent sale would clearly have violated the statute. It makes no sense to limit the scope of the statute simply because some might otherwise commit fraud to avoid being accused falsely.

■ Defendants also contest plaintiff's injury. Even if she had no proof of any harm, the Act presumes damages as discussed above. However, actual injury does not include the time plaintiff spent in negotiations or the emotional harm of her embarrassment or anger. The statute addresses these transaction costs by allowing for a minimum recovery of $1500. Plaintiff has adduced no evidence of any other harm, and thus her damages shall be limited to the statutory minimum.

The Act also allows for the recovery of "reasonable" attorneys' fees. This Court intends to take a hard look at the size of

any claim for fees. *Cf. Tusa v. Omaha Auto Auction Inc.,* 712 F.2d 1248, 1254 (8th Cir.1983) (fees should be proportional to damages); *Lindsay v. Anderson & Sons Auto Sales, Inc.,* 690 F.Supp. 1028 (N.D. Ga.1988) (fees must reflect fact that odometer litigation is "routine and unsophisticated").

The Court does not rule on which defendants, if any, are "transferors" under the Act. Although the parties did not brief this issue, it appears that any defendant who was not directly included in the chain of title cannot be held personally liable on the federal cause of action. *See McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 229 (1st Cir.1980) ("transferor" must have personal ownership interest); *Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir.1979) (same), *citing Duval v. Midwest Auto City, Inc.,* 578 F.2d 721 (8th Cir.1978); *Bryant v. Thomas,* 461 F.Supp. 613 (D.C. Neb.1978). *Contra Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397 (S.D.W.Va.1975).

The Court will refer this action to Magistrate Brazil for a settlement conference. The parties shall contact Magistrate Brazil and arrange for a mutually acceptable date. Both plaintiff and the owner of Paradise Motors shall attend the conference.

Defendants' motion for summary judgment is denied. The parties shall report for a status conference on January 16, 1990, at 8:45 AM.

IT IS SO ORDERED.

---

1. In 1962, the California legislature extended the disclosure requirements applicable to conditional sales contracts to purchase orders. Compare the following comment to the discussion of pre-sale pressures *supra:*

   [Before 1962, a] few dealers developed the practice of embodying the initial agreements of the buyer and the seller's salesman within a purchase order which did not reveal all the cost elements. The sales manager, when

   called in, apologetically declined approval of the order, and new negotiations would commence. Tired, and somewhat confused upon learning that the previously completed purchase order was not a binding agreement, the buyer was then more susceptible to the sales manager's proposals.

   Note, *The Rees–Levering Motor Vehicle and Sales and Finance Act,* 10 UCLA L.Rev. 125, 128 (1962).